# Third District Court of Appeal

## State of Florida

Opinion filed September 6, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-551
Lower Tribunal No. 13-887
_____

**Deleon Brownlee,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Veronica Diaz and William Altfield, Judges.

Carlos J. Martinez, Public Defender, and Maria E. Lauredo, Chief Assistant Public Defender, and James A. Odell, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellee.

Before LOGUE, C.J., and GORDO and LOBREE, JJ.

LOBREE, J.

Deleon Brownlee appeals from the trial court's revocation of probation and sentence claiming ineffective assistance of counsel on the face of the record, alleging the evidence supporting one of the grounds for violation of probation was solely hearsay, and that his sentence is illegal and in violation of the statutory maximum where the trial court did not orally pronounce that it was as a habitual offender. We affirm the revocation of probation but reverse in part and remand for entry of a written order of revocation of probation and a sentencing order in conformity with the oral pronouncements made by the trial court upon resentencing.

**BACKGROUND**

On February 2, 2015, Brownlee pleaded guilty to leaving the scene of an accident with property damage, driving without a valid driver's license, and leaving the scene of a crash involving no serious bodily injury. The trial court sentenced him as a habitual offender to two years of community control and 120 days in county jail. Thereafter, he was charged by a second amended affidavit of violation of probation with: 1) possession of cocaine as shown through a urine sample tested by his probation officer and later confirmed by a laboratory; 2) failing to report as directed as of June 2, 2016; 3) changing his residence without the consent of the officer, as told to the officer by a fellow officer who visited the residence on June 27, 2016; 4)

2

failing to remain at liberty without violating the law by committing attempted felony murder on June 24, 2016; and 5) failing to remain at liberty without violating the law by use of a firearm during commission of a felony.

On March 4, 2019, the trial court conducted a hearing on the affidavit of violation of probation. At the outset of the hearing, the state advised the trial court that Brownlee previously had been sentenced as a habitual offender, he faced up to ten years in prison on the alleged violations, and no offer had been made due to the seriousness of the allegations and his absconding from supervision for two years.

Officer Rosquete testified that Brownlee was placed under his supervision as of January 2016, when he instructed him about his orders, including the requirement to report on the first Friday of every month. On June 2, 2016, Officer Rosquete administered a field drug test to Brownlee, and a test strip showed that his urine sample was positive for cocaine. The sample was sent to a laboratory that confirmed the positive result.

After Brownlee tested positive, he stopped reporting, and another violation occurred as that was the last time Officer Rosquete saw Brownlee. Officer Rosquete testified that Brownlee did not report from June 2016 through the date that the amended affidavit of violation was filed in 2018. Officer Rosquete testified that after Brownlee stopped reporting, there was

3

another violation for "absconding." He testified that Probation Officer Francis went by Brownlee's residence with some Miami Gardens police officers, and they were told by a neighbor that Brownlee did not reside there anymore and had been gone for over a month. Brownlee never notified Officer Rosquete about a change of residence or move.

Detective Rodriguez testified about responding to the scene of an attempted homicide, observing blood, and collecting casings, for which the state did not file new charges.[1] Relevantly, Detective Rodriguez testified that after the shooting, "we made several attempts to go to the house. And we were told that he was not living there anymore, that he was, according to the people inside of the house, he was hiding somewhere in Opa-Locka." Notably, Brownlee's registered residence was the location where the attempted murder occurred, where the alleged victim and a witness (who was the victim's girlfriend and Brownlee's cousin) lived, and had allowed Brownlee to stay.

At the conclusion of the hearing, defense counsel argued that "the only

---

[1] Recorded statements that Detective Rodriguez took from the alleged victim and his girlfriend, identifying Brownlee as the shooter, were introduced at the hearing. Another witness also identified Brownlee in a photo lineup and told the detective that he saw Brownlee shoot the victim. All three refused to cooperate and did not testify at the hearing.

thing that would constitute a violation of . . . probation would be the absconding" as the other allegations were solely hearsay. The court found that Brownlee was in violation of his probation, stating:

> While I understand the -- the issues that the defense has with the evidence that the State has put forward in regards to the alleged attempted murder, putting that evidence aside, there's still an overwhelming amount of non-hearsay evidence that this Court can rely on to find that Mr. Brownlee willfully violated his probation. It's interesting to think well, you ran away for two years. You ran away at the same exact time of this alleged attempted murder. While this is not a jury trial and while the State does not have to prove beyond and to the exclusion of every reasonable doubt that Mr. Brownlee committed the crime, a reasonable person would think that running away for two years on the day where such acts are committed, there is a high, high, high possibility that Mr. Brownlee committed those acts.
>
> Notwithstanding, even if the Court were to disregard the evidence that the State has put forth regarding those acts, Mr. Brownlee still tested positive for cocaine. There was sufficient testimony from Officer Rafael Rosquete that he not only saw the urine sample being done but he took it. It was his firsthand evidence that he did that. That coupled with the fact that Mr. Deleon -- Mr. Brownlee has failed to be in the jurisdiction of this Court knowing well that he had taken a plea. . . .
>
> . . .
>
> There's sufficient evidence to convince the Court that Mr. Brownlee is in violation of his probation, that it is a willful violation and Mr. Brownlee will be sentenced to ten years in state prison.

5

The court did not orally pronounce that this sentence was again imposed as a habitual offender sentence. Habitual offender status was reflected in the subsequent written sentencing order, but not on the scoresheet.

On September 16, 2019, Brownlee filed a Florida Rule of Criminal Procedure 3.800(b) motion contending his sentence exceeded the statutory maximum for a third-degree felony, and that the court's failure to orally reimpose the habitual offender designation when revoking the probation rendered the sentence illegal. Brownlee argued that the habitual offender designation should be stricken, and he should be resentenced pursuant to White v. State, 892 So. 2d 541, 542 (Fla. 1st DCA 2005) ("To effectuate a habitual felony offender sentence upon revocation of probation, a trial court must orally pronounce habitual felony offender status, even when the appellant was initially sentenced as a habitual felony offender for the substantive offense and the designation has not been set aside."). The state initially agreed that Brownlee was not sentenced as a habitual offender and that resentencing was required, but argued that the court could re-impose the ten-year sentence pursuant to Stauderman v. State, 261 So. 3d 649, 653 (Fla. 2d DCA 2018).

Predicated on the parties' stipulation, a successor judge granted the motion and vacated the sentence. Thereafter, the state withdrew its

stipulation and contended that no "magic words" were needed if it was clear from the record that the court intended to sentence Brownlee as a habitual offender, relying upon Lewis v. State, 16 So. 3d 1021 (Fla. 5th DCA 2009); Zink v. State, 943 So. 2d 895 (Fla. 4th DCA 2006); and Scanes v. State, 876 So. 2d 1238 (Fla. 4th DCA 2004). The state asserted that a de novo resentencing was not needed because it was clear that the former judge's failure to orally pronounce the habitual felony offender designation was an oversight, such that a correction of which would be a ministerial function. Alternatively, the state argued that a de novo sentencing could occur because double jeopardy did not attach to an illegal sentence.[2]

On March 4, 2020, the trial court noted that it had reviewed the transcript of the earlier proceedings, and then heard argument of counsel regarding the need for a de novo sentencing hearing. Thereafter, the court announced its intent to engage in a de novo sentencing hearing and allow the defense to present evidence. Two witnesses (Brownlee's aunt and uncle) testified in mitigation, and Brownlee gave a brief allocution. The parties argued to the court regarding the appropriate sentence, but the trial court deferred ruling.

---

[2] Brownlee does not dispute that his double jeopardy rights are not impacted here.

During the subsequent hearing on July 15, 2020, the trial court noted that it had granted Brownlee's 3.800 motion and held a full resentencing hearing including argument of the parties. However, on the same date, the trial court also issued an order denying the rule 3.800 motion. The order provided that the sentence was to reflect a habitual offender designation, which was the intent of the original trial judge as demonstrated by the record. Upon Brownlee's objection at the end of a proceeding, the successor judge appeared to contradict himself and found:

> No, but I'm – I'm not relying. . . . I'm saying that the Court, based upon what I have reviewed, based upon that what I have heard in terms of the testimony, do find that the Defendant should be sentenced. And based upon what I had observed, there is no doubt in this Court's mind that it was the previous judge's intent. But that's not the reason why I'm sentencing to ten years. The reason is because I actually sat on this – on the bench listening to the testimony, reviewing the record on my own, and I do make an independent finding of ten years as a habitual offender.

When the clerk inquired about the sentence as the court file reflected that Brownlee had already been sentenced to ten years, the trial court added:

> I guess for – for intents and purposes, I'm sentencing him, I'm resentencing him, I gather would be the appropriate term. He is being resentenced to the ten years as habitual offender with credit for all time served.
>
> . . . .

8

> [T]he Court is going to vacate the previous order entered by [the predecessor judge], and the Court is now entering a new order sentencing this Defendant to ten years as a habitual offender. Hopefully that will clarify the record.

Thereafter, no new written sentencing order was rendered. This appeal follows.

## ANALYSIS

A probation revocation order is reviewed for an abuse of discretion. Duquesne v. State, 242 So. 3d 1183, 1185 (Fla. 3d DCA 2018). "Ineffective assistance of counsel claims usually are not cognizable on direct appeal [except] in the rare situation where ineffectiveness (both performance and prejudice) is 'indisputable from the face of the record . . . .'" Smiley v. State, 295 So. 3d 156, 174 (Fla. 2020) (quoting Monroe v. State, 191 So. 3d 395, 404 (Fla. 2016)). Thus, "[a] de novo standard of review applies to claims of ineffective assistance of counsel raised on direct appeal." Squire v. State, 278 So. 3d 153, 155-56 (Fla. 4th DCA 2019).

There is no merit to the claim alleging ineffectiveness of counsel for conceding that Brownlee absconded[3] from probation on the basis that apart

---

[3] Officer Rosquete used the term "absconding" when testifying about the allegation that Brownlee changed his residence without first procuring the consent of the probation officer.

from this, only hearsay evidence was introduced to support his violations. Officer Rosquete testified directly about Brownlee's failure to report from 2016-18. Brownlee correctly argues that Officer Rosquete only testified about hearsay evidence from a fellow officer who spoke with a neighbor about Brownlee's change in residence. However, Brownlee's change in residence also coincided with the time of the attempted homicide *at that location*, and the police search for him. Detective Rodriguez testified, "*we* made several attempts to go to the house. And *we* were told that he was not living there anymore, that he was, according to the people inside of the house, he was hiding somewhere in Opa-Locka." Thus, counsel was not ineffective in making this argument given the non-hearsay evidence from the officer, combined with hearsay from neighbors and occupants of the house.

Further, the evidence supported revocation of probation based on the positive drug test for cocaine. See Ware v. State, 197 So. 3d 1147, 1150 (Fla. 2d DCA 2016) (concluding totality of hearsay and non-hearsay evidence of officer performing field drug test, confirmed by laboratory test, was sufficient to establish probationer's possession of cocaine by greater weight of evidence) (citing State v. Queior, 191 So. 3d 388, 393 (Fla. 2016)); Bell v. State, 179 So. 3d 349, 358 (Fla. 5th DCA 2015) ("Because the hearsay evidence regarding the independent confirmatory test was

10

corroborated by the probation officer's non-hearsay testimony regarding his field test results, we find no abuse of discretion in the trial court's finding that Bell violated his probation as alleged . . . .").

The state argues that Brownlee failed to preserve the issue of the legality of his sentence by contemporaneous objection at the revocation hearing, which could have easily remedied the trial court's oversight. However, this claim was properly raised in a rule 3.800(b)(2) motion. See Brown v. State, 225 So. 3d 319, 320 (Fla. 3d DCA 2017) (recognizing written order that deviates from oral pronouncement as "sentencing error" subject to rule 3.800(b) (citing Jackson v. State, 983 So. 2d 562, 572 (Fla. 2008))).

Bound by State v. Akins, 69 So. 3d 261, 271 (Fla. 2011), which concluded that in the absence of any clear intent to designate a defendant as a habitual offender in oral pronouncements, a trial court's subsequent reimposition of habitual offender status upon a violation of probation and sentence amounted to an illegal sentence and manifest injustice, the trial court was required to grant the rule 3.800 motion and conduct a de novo resentencing.[4]  The trial court did so and made oral pronouncements

---

[4] The procedural problems highlighted by this case support Justice Canady's dissent that the designation of a defendant as a habitual felony offender with respect to a particular offense need not be reestablished in a sentencing upon revocation of probation. See Akins, 69 So. 3d at 272-73 (Canady, J., dissenting).

regarding sentencing, but then entered an order reaffirming the predecessor judge's sentence on the basis that the record showed it was her intent to sentence Brownlee as a habitual offender. Brownlee argues that the trial court's subsequent order denying his rule 3.800 motion, which reflects that the imposition of habitual offender status was based on the intent of the original trial judge, violates Akins. Further, he contends that another resentencing hearing must be conducted on a blank slate. See Preston v. State, 607 So. 2d 404, 408 (Fla. 2014).

While not cited in the trial court's order denying the rule 3.800 motion, it appears that the court was relying on Lewis, Zink, and Scanes in its entry rather than simply reaffirming the predecessor judge's ruling when entering a new sentence. Nonetheless, the oral pronouncements of the trial court at the resentencing hearing contradict Brownlee's contention that he did not receive a de novo resentencing independent of the intent of the predecessor judge. See Franquiz v. State, 724 So. 2d 128, 129 (Fla. 3d DCA 1998) (where record demonstrates that successor judge "took considerable time with . . . case prior to resentencing, and . . . was thoroughly familiar with the background and circumstances," resulting sentence will generally be upheld as independently formulated); see also Stauderman, 261 So. 3d at 653 (court did not err in designating defendant as habitual offender at resentencing

following vacatur of his prior illegal sentence for failure to orally pronounce designation at prior sentencing hearing). Accordingly, Brownlee is entitled to no relief, as the record reflects not only that he was initially sentenced as a habitual offender, but that it was the intent of the judge who revoked his probation, and the independent judgment and pronouncement of the successor judge who presided over the resentencing hearing, that he be sentenced to ten years as a habitual felony offender. Thus, we affirm the revocation of probation and sentence, but reverse for entry of a written order of revocation of probation and a sentencing order consistent with the trial court's oral pronouncements on July 15, 2020.

Affirmed in part, reversed in part, and remanded with directions.

GORDO, J., concurs.

LOGUE, C.J., dissenting.

The majority acknowledges that the trial court wrongfully denied Brownlee's motion for resentencing. And yet the majority does not reverse that admittedly erroneous denial. Instead, it holds that, although the trial court denied the motion for resentencing, the trial court nonetheless conducted a resentencing hearing and properly resentenced Brownlee, albeit to the same ten-year sentence. The result of the majority's attenuated reasoning is to deny Brownlee the full, fair, de novo resentencing to which he is entitled. I respectfully dissent.

**BACKGROUND**

The majority acknowledges that Brownlee properly challenged the legality of his sentence in a Rule 3.800(b)(2) motion. In that motion, Brownlee asserted that his sentence of ten years as a habitual felony offender was illegal because the original sentencing judge failed to orally find and pronounce his habitual offender status at the sentencing hearing, as required by law. The State initially agreed that Brownlee had not been properly sentenced and that resentencing was required. The successor trial judge then properly vacated the sentence and ordered a resentencing hearing.

14

At the subsequent hearing, however, the State changed its position and argued that Brownlee's motion should be denied. The trial court ultimately agreed with the State, vacated its prior order granting Brownlee's motion for resentencing, and issued a new, written order denying the motion. As part of its ruling denying Brownlee's motion for resentencing, the trial court announced that Brownlee was sentenced to ten years – the amount of his prior sentence.

**ANALYSIS**

"To effectuate a habitual felony offender sentence upon revocation of probation, a trial court must orally pronounce habitual felony offender status, even when the appellant was initially sentenced as a habitual felony offender for the substantive offense and the designation has not been set aside." White v. State, 892 So. 2d 541, 542 (Fla. 1st DCA 2005). Under this law, the trial court's written order denying Brownlee's resentencing motion was error. The majority opinion acknowledges this:

> Bound by State v. Akins, 69 So. 3d 261, 271 (Fla. 2011), which concluded that in the absence of any clear intent to designate a defendant as a habitual offender in oral pronouncements, a trial court's subsequent reimposition of habitual offender status upon a violation of probation and sentence amounted to an illegal sentence and manifest injustice, the trial court was required to grant the rule 3.800 motion and conduct a de novo resentencing.

15

Majority op. at 11.

After (erroneously) denying Brownlee's motion for resentencing, the trial court sentenced Brownlee as a habitual felony offender and gave him the same ten years he had received previously. The States argues that this sentencing was a full, de novo resentencing as if Brownlee's motion had been granted. The majority adopts this argument. In other words, the majority and the State maintain that the trial court denied Brownlee's motion for resentencing and still conducted a proper, de novo resentencing hearing.

However, the sentence under review was not the product of an independent resentencing. This fact is evident by the manner in which the trial court imposed the exact same sentence while at the same time referring to "the previous judge's intent." Having denied Brownlee's motion, the trial court could not "resentence" Brownlee. Brownlee's purported resentencing hearing was a nullity.

In these circumstances, I believe the law requires that the order denying Brownlee's motion be reversed. In addition, I believe the law entitles Brownlee to a full, fair, de novo resentencing hearing not clouded by the consideration of his improper, initial sentence. See generally Puzio v. State, 320 So. 3d 684, 688 (Fla. 2021) (a serious sentencing flaw "cannot be cured through a ministerial correction that, by definition, would continue to deny

16

[the defendant] the constitutional sentencing proceeding he has yet to receive.").